State number 21-7014, Altagracia Sanchez et al, appellants, versus Office of the State Superintendent of Education and District of Columbia. Ms. Flaherty for the appellants, Mr. Tutkin for the appellees. Morning, council. Ms. Flaherty, please proceed when you're ready. Good morning, your honors, and may it please the court. My name is Renee Flaherty for the appellants. This court should reverse the district court's dismissal under Rule 12B-6. The District of Columbia requires daycare providers who are largely immigrants, largely women, and largely poor to get college degrees in order to continue caring for children. These regulations impose crushing burdens with no benefits. An education in early childhood sounds like a good label, but in these kinds of cases, courts look beyond the labels. There's a disagreement in case law around the country about how much of a law's educational requirements must be relevant in order for them to be rational. And that disagreement has never been resolved on a motion to dismiss. That's because courts actually look at these training programs to see what they're like on a factual record. Is there any case striking down the requirement like this on rational basis review? Yes, your honor, we've cited several. In federal courts, there are the Cornwell and Clayton cases striking down cosmetology licensing. And then in the Fifth and Sixth Circuit, there's the St. Joseph Abbey and Great Miles cases striking down funeral director licensing. And those were all cases about educational requirements. And the government ignores those cases entirely. The government's chief case, Hatinga versus United States, isn't about educational requirements. It's about milk marketing orders that control prices. And it was decided- It's a requirement to have a degree in child education in order to care for children. And I take your point about the crushing burden sounds like a pretty good policy argument, but I'm not sure it makes the requirement irrational. I'm sure you know you have a pretty steep hill to climb on rational basis review. Yes, your honor. And a degree in early childhood education sounds like a good label and it sounds like it would be relevant, but what plaintiffs are alleging, two things. First of all, to get an associate's degree, I think no one questions that there are many classes that would be completely irrelevant to caring for children. Think about advanced math classes and English composition classes. But plaintiffs are also alleging that the classes within the major may not be relevant. And that's because these curriculums vary wildly in their composition. And there's no guarantee that my clients would learn anything relevant to caring for children ages zero to three. As long as it's conceivably reasonable, it passes constitutional muster, right? So that's beach communications and beach communications must be read in context. And that's exactly what the court in Cornwell did. There were two opinions in Cornwell. One was on a motion to dismiss and the court specifically cited beach communications there. And it said that plaintiffs will have a heavy burden on remand citing beach communications. But at the motion to dismiss stage, all of the allegations and the complaint must be taken as true. And beach communications says nothing about the pleading stage. In fact, beach communications wasn't about a motion to dismiss. So plaintiffs have alleged three plausible claims, substantive due process, equal protection and non-delegation. First substantive due process. As I said earlier, there's no guarantee that my clients would learn anything relevant if they got an early childhood degree because there's no single coherent curriculum. And it's irrational for the district to require daycare providers to obtain a credential that isn't going to teach them anything, especially when it places an insurmountable burden on our plaintiffs and hundreds of other daycare providers like them. Many daycare providers in the district, English isn't their first language. And so having them take college level English classes is frankly going to be impossible for many of them. And it doesn't have any bearing whatsoever on whether they're good at their jobs. Plaintiffs also bring a valid equal protection claim. If the government is going to treat different kinds of childcare providers differently, those differences in treatment have to be related to their job. And finally plaintiffs state a valid non-delegation claim. OSCE acted with complete untrammeled legislative authority here. The government hasn't been able to point to anything that restrained them. And that makes this a unique case. The clearest sign that OSCE was exercising limitless authority here is the regulations themselves. No agency that had some oversight over it was going to require people to get a college degree to do something that they've been doing for thousands of years, caring for small children. And if the court has no further questions, this court should reverse the district court's dismissal under rule 12B6 and I'll reserve the rest of my time for rebuttal. Thank you, Ms. Flaherty. We'll hear from the district now. Mr. Tootkin. Thank you, your honor. And may it please the court, I'm Adam Tootkin on behalf of the District of Columbia and the Office of the State Superintendent for Education. My friend's presentation this morning reveals what this case is really about. Plaintiffs' claims are policy disputes. They dispute the necessity, costs, and wisdom of these requirements. But those disputes are better directed at the political processes. Disputes of a constitutional dimension, they are not. At bottom, plaintiffs in this case attack sensible requirements enacted with commonplace statutory authority. But that attack fails with a straightforward application of well-settled standards. Indeed, in applying those same standards, this court has regularly affirmed dismissals on the pleadings. This case requires nothing different. I welcome the court's questions, but I'm happy to start with the discussion of the due process claim. So turning to that claim, the basis for OSSI's regulation can be summed up simply, requiring childcare providers to obtain a minimum education in serving early children would lead to better childcare. This is no different than requiring a historian to have a history degree. Moreover, science increasingly shows that this is an impressionable age. An individual's educational journey doesn't begin at the schoolhouse, it begins in the cradle. So it's rational to require those working with this age group to have an understanding of this critical time for development. Yeah, please go ahead. Under that theory, nobody should be a parent unless they have a college degree, right? That's not the theory we're pressing here, Your Honor, because we're not saying that these requirements are necessary. And necessity isn't the test for rational basis. We're just saying that it's rational to require a degree, just like it's rational to ask an accountant to have an accounting degree or historian to have a history degree. And we're specifically talking about here too is not all childcare, but childcare in a specific setting, specifically childcare provided to three or more unrelated children on a regular basis. And at some point though, the mismatch between what's required for these jobs and the intensiveness of what you're requiring, and you have a lot of leeway, but I mean, at some point this will become irrational, right? I mean, suppose you required that these folks have a PhD. Respectfully, Your Honor, I think there is a limit where rationality comes up, but I think for the PhD hypothetical, that would be constitutional as a straightforward application of the standard because it's reasonably conceivable that a degree in early childhood, no matter- In order to care for half a dozen kids in kindergarten. Again, the standard is just whether it's reasonably conceivable, and that might not be perfectly logical. That might be burdensome or unwise, but each communications and we optical tell us that that is a decision for the legislature or the political processes. So I don't think we'd actually ever see a PhD requirement simply because the democratic processes provide the limiting principle in rational basis cases. Was there any, is there anything in the history behind these statutes? Was there some documented problem of abuse? I mean, what led to these statutes? There are two responses here. In the regulatory text, we see Aussie considering new research coming to light, increasingly showing how impressionable of an age this is and how an education and understanding how children develop at this age and that their educational process really begins at this age would be helpful. Second, the second point I wanna make here is that there doesn't have to be a documented problem for this to survive rational basis. We think that the regulatory text here does reveal careful consideration by Aussie. However, the Supreme Court has made clear in rational basis cases that empirical support for a documented problem isn't necessary, excuse me, for the state to pass a regulation. So plaintiffs here try to push their claims forward by misstating the standard. And they say that the education requirements do nothing to further the state's interest or that there's no guarantee that they will work. But that's not actually relevant to the operative inquiry. The operative inquiry is whether a rational legislator could have thought that the requirements would further the state's interest. I'm here just as it's rational to think that a historian would benefit from a history degree, it's rational that a childcare provider would benefit from a degree in early childhood education. Moreover, these communications in the optical tell us that the legislators or the state can proceed on generalizations and assumptions. And even if they don't turn out to be true in practice, that's from Gregory V. Ashcroft, there's not a constitutional problem because we're more concerned about what could a rational legislator have thought. And so the fact that the plaintiffs can identify certain degree programs where certain courses are not perfectly relevant to their exact type of childcare isn't fatal on rational basis review. So just to be clear, the standard, I know that the standard is steep, obviously, and it's that if it could conceivably be rational for a legislator to think that, but it's also, there's a lot of leeway for a plaintiff at the motion to dismiss stage. So they only have to have a plausible claim, right? So, I mean, it's still a steep climb given the rational basis standard, but it only has to be plausible that a rational legislature couldn't have conceivably thought of the justification, right? So the standard that this court has articulated for a rational basis case is at the motion to dismiss and Tinga, Emery, and Dixon is that the plaintiffs have to show that there's no conceivable basis for this regulation. So I don't understand that because the word plausible is just missing there. And under Twombly and Iqbal, they require something, but they still only require a plausible claim at the motion to dismiss stage. I'm not saying that this means that you lose here. I'm not saying that, but I'm just saying in terms of understanding the inquiry, I thought from Twombly and Iqbal that the plaintiffs only have the burden to show a plausible claim at the dismissal stage, not a winning claim. I think what's helpful to understand to put this together is the Comcast case that we cite in our briefs. And there, Justice Gorsuch's opinion explained that at the motion to dismiss stage, to decide what is necessary to make a claim plausible, we look to what the plaintiffs have to prove at the end of their case. And here, the rational basis standard is very high. So in many cases, there just won't be facts that make it any more plausible that their claim will succeed because we're operating, or what we're really looking at is any reasonable conceivable basis. So these cases don't turn on facts or allegations. And the reason- I think there's gotta be a logical difference between saying there's no conceivable rational, what's the standard, let's see, any conceivable state of facts, any reasonably conceivable state of facts. To say that there's no reasonably conceivable state of facts is one thing. And to say it's not plausible to think there's no reasonably conceivable state of facts is another thing. The second one, I mean, we're still in a zone that is really favorable to you no matter which one we're talking about. And my point is simply that if you interpose the plausibility layer on top of the standard, by definition, it's a lesser burden for the plaintiff to show than if you didn't have the plausibility standard interposed. I don't... Respectfully, Your Honor, I think the way that Hatinga and Emory and Dixon have articulated the standard has been that the plaintiff's, that the plausibility of facts isn't actually important in rational basis cases just in light of the ultimate merit standard. And so those courts or those cases at articulation of the standard is currently binding on this panel. I understand that the plaintiffs have their issues with that standard, but at this stage we would adhere to that standard that they have to show no conceivable basis. And we think that a basis is apparent from the regulations themselves and the regulatory history. Is there any difference between, we're used to hearing cases attacking regulations under the Administrative Procedures Act. Is there any difference between something that's arbitrary and capricious versus something that's irrational? Yes, so the arbitrary and capricious standard would be more forgiving to plaintiffs because there you can look at burdens. The FCC versus Prometheus radio case, Justice Kavanaugh has said that to satisfy arbitrary and capricious, the regulation must be reasonable. When on rational basis review, there's no consideration really of reasonableness, rationality is a different standard. So plaintiffs could have raised many arbitrary and capricious arguments and indeed many of their arguments sound like arbitrary and capricious arguments. However, they chose not to do so and they haven't raised any APA style claim, which as we show in our brief is cognizable under DC law. I have one more question because of the familiarity with the APA. And I probably should ask Ms. Flaherty this, but I'll ask you first and then I hope she can respond too. When we get a case dealing with the validity of a regulation under federal law, the record is not to be developed in an evidentiary hearing before the district court. We take that case and we review the case, whether it starts in the district court or the court of appeals on the basis of the administrative record alone. And so my question is whether you've made that argument that the judicial review should be limited to the regulation or the record developed in producing the regulation. Just to make sure I answer your question, are you saying for the equal protection and due process claims, whether the record needs to be developed  to only the record that was developed in the administrative proceedings leading to the regulation? No, for rational basis review, the evidence, the legislative record is not relevant. Beach Communications tells us that and other courts of appeals have held that even- Is that for a statute or is it for, whether it's a statute or a regulation, doesn't matter? Correct, the Supreme Court has never differentiated the type of- See, I can understand why you would say that the legislative history or whatever is not relevant to the validity of a statute because oftentimes in various states, there is no legislative history to speak of. They don't transcribe hearings and so on and so forth. But when it comes to a regulation, there are procedures that have to be followed and notice and comment and evidence developed and everything else, so it's a different animal. That's correct, Your Honor, but for rational basis cases, the Supreme Court has never differentiated by the type of law. We cite in our case, Dandridge v. Williams, and that's where the Supreme Court reviewed using the same standard as Beach Communications, a Maryland regulation. So the type of lead up to the law isn't relevant because ultimately we're just looking for any conceivable basis, so the record isn't relevant. I'm happy to answer any more questions, but I see that my time has expired. Thank you, Mr. Titkin. Ms. Flaherty, I think you stopped with about four and a half minutes left. Yes, Your Honor, thank you. So I have two points I'd like to make, one addressing a question from Judge Katsas and one from Judge Randolph. Judge Katsas asked whether there were any documented problems that led to these regulations, and the government hasn't pointed to anything. And in fact, they haven't said why OSCE's old requirements weren't enough. And OSCE's old requirements are actually a great example of something that would be rational and constitutional. They required previously what's called a Child Development Associate Credential. And a Child Development Associate Credential is something that you can look at and see that it's a set curriculum, you know what it is, and you know that it's relevant to caring for children ages zero to three. And so that's an example of something that is completely rational. But OSCE hasn't articulated a reason why that wasn't enough, a reason why a college degree is necessary. And leading into Judge Randolph's question, it's because they didn't have to.  There was no requirement that they develop a record. In fact, they actually refused to translate these regulations into Spanish so that the people who were affected most by these regulations could even read and understand them. And that's just one illustration of how absolutely arbitrary and unaccountable OSCE was being in promulgating these regulations. And my friend's arguments were chiefly factual. There was a lot of talk about the legal standard, but I think the heart of his argument was about the facts. And at this stage, the allegations in our complaint must be taken as true. And we do have a high burden to meet on remand, but we are more than ready to meet that burden. And if the court has no further questions, I respectfully ask that it reverse the district court's dismissal under Rule 12b-6. Thank you. Thank you, counsel. Thank you to both counsel. We'll take this case under submission.
judges: Srinivasan, Katsas, Randolph